**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ALLIANCE OF AUTOMOBILE | : | |
| MANUFACTURERS, INC., | : | |
|     Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:13-CV-398 (JCH) |
|     v. | : | |
| | : | |
| MELODY A. CURREY, COMMISSIONER, | : | MAY 28, 2014 |
| DEPARTMENT OF MOTOR VEHICLES | : | |
| OF THE STATE OF CONNECTICUT, | : | |
|     Defendant, | : | |
| | : | |
|     and | : | |
| | : | |
| CONNECTICUT AUTOMOTIVE | : | |
| RETAILERS ASSOCIATION, | : | |
|     Intervenor. | : | |

**RULING RE: PLAINTIFF'S MOTION TO REOPEN (Doc. No. 65)**

On November 26, 2013, the court dismissed the Complaint in this case for failure to state a claim. Ruling Re Def.'s Mot. to Dismiss ("MTD Ruling") (Doc. No. 63) at 42. Plaintiff Alliance of Automobile Manufacturers, Inc. ("Alliance") moves to reopen the case pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure and for leave to file an amended complaint pursuant to Rule 15(a). Defendant Commissioner of the Connecticut Department of Motor Vehicles (the "Commissioner") and intervenor Connecticut Automotive Retailers Association ("CARA") oppose the Motion.

For the reasons below, Alliance's Motion to Reopen (Doc. No. 65) is **DENIED**.

## I.   BACKGROUND

The court assumes familiarity with the broader background of this case, as set forth in the court's November 26 Ruling. See MTD Ruling at 2-5. The gravamen of Alliance's Complaint is that provisions of the Connecticut Franchise Act ("CFA"), as

amended in 2009, are unconstitutional.   The provisions at issue (collectively, the "2009 Amendments") consist of:  (1) revisions to the statutory methods for determining reasonable compensation for warranty repairs performed by authorized motor vehicle dealers (the "Reimbursement Provisions"); and (2) a related provision prohibiting manufacturers from recovering from in-state dealers costs incurred as a result of the Reimbursement Provisions (the "Recoupment Bar").

In its November 26 Ruling, the court held, <u>inter alia</u>, that Alliance has standing to challenge the 2009 Amendments on their face; that such a facial challenge is ripe for adjudication; that an as-applied challenge has not been sufficiently pled; and that abstention is unwarranted.  MTD Ruling at 8-27.  The court held, however, that the Complaint failed to state plausible constitutional claims under the Contracts, dormant Commerce, and Due Process Clauses.  <u>Id.</u> at 28-41.  In particular, the court concluded that the Complaint lacked each of the following:  (1) facts suggesting unforeseeability, as required to state a plausible Contracts Clause claim in the context of a historically regulated industry; <u>id.</u> at 28-33;  (2) facts cognizable as either "facial discrimination" against out-of-state competitors or an "undue burden" on interstate commerce, as required to state a plausible dormant Commerce Clause claim under the first two prongs of the analysis, <u>id.</u> at 34-37; (3) facts indicating extraterritorial regulation, as required to state a plausible dormant Commerce Clause claim under the third and final prong of the analysis, <u>id.</u> at 37-39; and (4) facts that, if true, would overcome the strong presumption of legislative rationality, as required to state a plausible due process challenge to economic legislation like the 2009 Amendments, <u>id.</u> at 39-41.

Accordingly, the court dismissed Alliance's constitutional claims as well as the related section 1983 claim.  In the absence of any federal claims, the court declined to exercise supplemental jurisdiction over Alliance's state law claim and directed the Clerk to close this case, stating, "If Alliance believes that it can allege facts sufficient under Rule 11 to warrant repleading in light of this Ruling, it has until December 16, 2013 to move the court to reopen the case with a proposed amended complaint attached."  Id. at 42.

The proposed Amended Complaint newly alleges that some sales and service agreements between Alliance's Members and in-state dealers ("Dealer Agreements") predate not only the 2009 Amendments but also the enactment in 1982 of the CFA, as well as Maine's enactment in 2003 of the first law analogous to the Recoupment Bar at issue in this case.  First Am. Compl. (Doc. No. 65-1) ¶ 20.  In addition, Alliance alleges that, when dealers purchase new motor vehicles from manufacturers, title typically transfers outside Connecticut.  Id. ¶ 22.  Finally, Alliance alleges that the 2009 Amendments regulated the reimbursement of warranty repair parts for the first time, id. ¶¶ 31-33; that the 2009 Amendments contradict the Connecticut legislature's stated rationales for their enactment, id. ¶ 55; and that the 2009 Amendments impose a burden on out-of-state manufacturers which is excessive in relation to the putative benefits conferred exclusively on in-state dealers, id. ¶¶ 60-61.

## II.    STANDARD OF REVIEW

Rule 15 instructs that courts "should freely give leave" to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Even under this liberal standard, however, leave to amend need not be granted where amendment would be futile.  Williams v. Citigroup

Inc., 659 F.3d 208, 214 (2d Cir. 2011).[1]  A proposed amendment is futile if it could not

withstand a Rule 12(b)(6) motion to dismiss.  Dougherty v. Town of N. Hempstead Bd.

of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002).  The proposed complaint must,

therefore, allege facts sufficient "to state a claim for relief that is plausible on its face."

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007).  "Factual allegations must be

enough to raise a right to relief above the speculative level, on the assumption that all

the allegations in the complaint are true (even if doubtful in fact)."  Id. at 555 (citations,

internal quotation marks, and footnote omitted).  The court's customary acceptance of

the facts in the complaint does not apply to legal conclusions, regardless of whether

such conclusions are couched as factual allegations.  Ashcroft v. Iqbal, 556 U.S. 662,

678 (2009).

## III.    DISCUSSION

        Alliance argues that its proposed Amended Complaint remedies the pleading

defects identified by the court and, hence, that the case should be reopened to permit

Alliance to proceed on its claims.  The court disagrees.  Having reviewed the parties'

submissions in connection with this Motion, the court concludes that reopening this case

with the proposed Amended Complaint would be futile and would lead only to relitigating

issues already decided by the court after extensive briefing and oral argument.

        While the futility of amendment is governed by the plausibility standard of Iqbal

and Twombly, it bears emphasizing that Alliance is challenging the 2009 Amendments

on their face, not as applied to some manufacturers under some circumstances.  The

_____

        [1] While the Commissioner and CARA have forcefully briefed the stricter standard of review for
reopening a case pursuant to Rule 60(b), and while the court did enter judgment in this case following its
November 26 Ruling, the court also gave Alliance a deadline to replead, and it was the court's intention to
permit repleading consistent with its November 26 Ruling.  Hence, in the court's view, the applicable
standard of review is that of Rule 15, not Rule 60.

court held—and Alliance does not contest in this Motion—that no as-applied challenge is properly framed for the court's review.  MTD Ruling at 15.  As the court noted in its November 26 Ruling, such challenges may well be unfit for review because they would require prior action by the Commissioner, and/or Alliance may lack associational standing to bring them because they would require Members to participate individually in the litigation.  Id.

The question before the court is whether Alliance's new pleadings plausibly state a facial challenge to the 2009 Amendments.  Facial challenges to legislation are disfavored because, inter alia, they ask courts to short-circuit the democratic process on the basis of a "factually barebones" record.  Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 450-51 (2008).  Outside of the First Amendment context, the challenger must "show that 'no set of circumstances exists under which the [statute] would be valid, i.e., that the law is unconstitutional in all of its applications,' or at least that it lacks a 'plainly legitimate sweep.'"  United States v. Decastro, 682 F.3d 160, 168 (2d Cir. 2012) cert. denied, 133 S. Ct. 838 (U.S. 2013) (quoting Wash. State Grange, 552 U.S. at 449).[2]  For that reason, a facial challenge is "the most difficult challenge to mount successfully."  United States v. Salerno, 481 U.S. 739, 745 (1987).

---

[2] The court recognizes that the distinction between facial and as-applied challenges is not always clear.  See Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 331 (2010) ("[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge."); In re Methyl Tertiary Butyl Ether Products Liab. Litig., 674 F. Supp. 2d 494, 504-05 & 505 n.71 (S.D.N.Y. 2009) ("There are few areas of the law that are as confused and conflicted as the law governing facial challenges."); Davis v. City of New York, 959 F. Supp. 2d 324, 344 & 344 n.79 (S.D.N.Y. 2013) ("The distinction between facial and as-applied challenges is not always clear, and has been defined in various ways.").

In a true facial challenge, courts typically look only to the text of the statute.  Field Day, LLC v. County of Suffolk, 463 F.3d 167, 174 (2d Cir. 2006) (citing City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 770 n.11 (1988)); see also Washington State Grange, 552 U.S. at 449-50 ("In determining

Many of Alliance's new pleadings are, in fact, legal arguments or conclusions that were, or could have been, presented to the court at the motion to dismiss stage. Absent an understanding of the law different from the one articulated by the court in its November 26 Ruling, none of these pleadings create a plausible basis for a facial challenge to the 2009 Amendments under the Contracts, dormant Commerce, or Due Process Clauses.

A.    Contracts Clause

The proposed Amended Complaint contains two new allegations pertinent to Alliance's Contracts Clause claim:  first, that the Reimbursement Provisions regulated payments for warranty repair parts for the first time in Connecticut history, First Am. Compl. ¶¶ 31-33; and, second, that many Dealer Agreements predate not only the 2009 Amendments but also the enactment in 1982 of the CFA as well as Maine's enactment in 2003 of the first law analogous to the Recoupment Bar, id. ¶ 20.  Both allegations are directed at the issue of unforeseeability.  However, neither succeeds in stating a plausible Contracts Clause claim without a change in the court's view of the law applicable to this facial challenge.[3]

The first allegation—that the 2009 Amendments newly regulated the reimbursement of payments for warranty repair parts—is nothing more than Alliance's characterization of the 1982 CFA.  In the court's view, this characterization runs counter

---

whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases.").  However, in deciding the Commissioner's Motion to Dismiss, this court considered all facts alleged by Alliance in its Complaint.  In an abundance of caution, the court has adopted the same course here, attempting to determine whether Alliance has stated plausible constitutional claims based on the allegations in the proposed Amended Complaint.

    [3] At oral argument on the Commissioner's Motion to Dismiss, Counsel for Alliance represented that the issue of reasonable foreseeability is a legal determination for the court, not a matter of the factual pleadings in the Complaint.  It is, therefore, all the more surprising that Alliance now seeks leave to reopen the case with the proposed Amended Complaint.

to the plain statutory text.  Under the CFA as it stood from 1982 to 2009, manufacturers were required to provide dealers with a schedule of compensation, and warranty repairs were to be reimbursed according to this schedule.  MTD Ruling at 2.  This required schedule was to cover both "parts and labor."  Pub. Act 82-445, § 2(a).  In fact, the 1982 CFA addresses parts no less than nine times in six different subsections.  See id. §§ 2(a), 2(c), 2(d), 4, 12(1) & 13(c).  It expressly contemplates claims by dealers for compensation of "labor and parts." id. § 2(d).  And, like the current law, the 1982 CFA required such compensation to be reasonable.  Id. § 2(b); Conn. Gen. Stat. § 42-133s(a); MTD Ruling at 2. The topic of parts is clearly covered by the 1982 CFA, albeit in less detail than labor.

As to the second allegation—that some Dealer Agreements predate the 1982 CFA as well as Maine's analog of the Recoupment Bar—Alliance challenges here neither the 1982 law nor the Maine law, but only the 2009 Amendments.  Alliance's Members have operated for decades in a regulated industry.  MTD Ruling at 29-30; cf. Alliance of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 42 (1st Cir. 2005).  To the extent that some Dealer Agreements predate the earliest such regulations, reasonably foreseeable future regulation may not be priced into the terms of those Dealer Agreements.  See Chrysler Corp. v. Kolosso Auto Sales, Inc., 148 F.3d 892, 895 (7th Cir. 1998); Donohue v. Mangano, 886 F. Supp. 2d 126, 157 (E.D.N.Y. 2012).  This issue, however, entails inquiry into specific Dealer Agreements and is not properly before the court on this facial challenge.  Moreover, as the court already noted, Alliance may well lack associational standing to prosecute such claims on behalf of some of its Members.

7

At the motion to dismiss stage, the court closely compared the 2009 Amendments to the 1982 CFA, and Alliance had the opportunity, at that time, to fully and fairly litigate the legal question of foreseeability.  Having identified the two principal differences between the prior and current versions of the CFA as (1) the manner of determining reasonableness and (2) the addition of the Recoupment Bar, the court concluded that the 2009 Amendments fell within the foreseeable scope of preceding regulation.  MTD Ruling at 31-32.[4]  Alliance's allegation regarding parts is simply an attempt to relitigate the court's conclusion regarding the foreseeability of the 2009 Amendments.

The court reaffirms here its determination in its November 26 Ruling that Alliance fails to state a plausible Contracts Clause claim, because nothing in the 2009 Amendments falls outside the foreseeable scope of preceding regulation.

B.      Dormant Commerce Clause

The new allegations pertinent to Alliance's dormant Commerce Clause claim are: (1) that the 2009 Amendments impose a burden on out-of-state manufacturers which is excessive in relation to the putative benefits conferred exclusively on in-state dealers, First Am. Compl.  ¶¶ 60-61; and (2) that, when dealers purchase new motor vehicles from manufacturers, title typically transfers outside Connecticut, id. ¶ 22.

The first is a legal conclusion, which the court need not accept and which Alliance advances only in order to reargue issues already decided by the court.  See MTD Ruling at 34-37.  In its November 26 Ruling, the court held that, where the in-state

---

[4] It bears emphasizing that Alliance could have raised the issue of parts at the motion to dismiss stage.  Instead, in its brief, and at oral argument, Alliance argued that what made the Reimbursement Provisions unforeseeable was the new manner of calculating warranty reimbursement rates.  See Pl.'s Opp'n to Def.'s Mot. to Dismiss (Doc. No. 39) at 30-32.

and out-of-state entities are not substantially similar and do not actually or prospectively compete in a single market, there is no claim either for facial discrimination, under the first prong of the dormant Commerce Clause analysis, or for undue burden, under the second (Pike balancing) prong.  MTD Ruling at 35-36 (citing Gen. Motors Corp. v. Tracy, 519 U.S. 278, 287 (1997)).  The 2009 Amendments distinguish, on their face, between manufacturers and dealers, irrespective of in-state residency.   A resident manufacturer would face burdens identical to Alliance's Members.  Furthermore, burdens which result from Members' voluntary decisions and not from actions dictated by the statute are not cognizable under the dormant Commerce Clause.

Alliance's second allegation regarding extraterritoriality likewise fails to state a plausible facial challenge to the 2009 Amendments under the third prong of the dormant Commerce Clause analysis.  On its face, the statute makes no reference to other states and entails no necessary interaction with other states' regulatory regimes.  MTD Ruling at 37-39.  The allegation that title typically transfers outside Connecticut when dealers purchase new motor vehicles from manufacturers may or may not suffice to state a plausible dormant Commerce Clause claim in the context of a properly framed as-applied challenge.  The court expresses no view as to the plausibility of this as-applied challenge, because no such challenge is present here.  While the court accepts such facts as true for present purposes, the Recoupment Bar cannot plausibly be invalid on its face merely due to one set of potential unconstitutional applications.

C.    Due Process Clause

The only new allegation pertinent to Alliance's due process claim is that the 2009 Amendments do not merely undermine but, in fact, contradict the legislature's stated

rationales.  First Am. Compl. ¶ 55.  This allegation does not suffice to state a plausible facial challenge under the Due Process Clause.

As the court noted in its November 26 Ruling, under rational basis review, the state may justify legislation "based on rational speculation unsupported by evidence or empirical data."  MTD Ruling at 40 (quoting Heller v. Doe by Doe, 509 U.S. 312, 320, (1993)).  Such legislation need not be effective or even logically consistent, in every respect, with its articulated aims.  Id. (citing Williamson v. Lee Optical, 348 U.S. 483, 487-88 (1955)).  Further, the court concluded that, in enacting the 2009 Amendments, the Connecticut legislature could reasonably have sought to help consumers by reducing the need for dealers to charge higher retail rates on non-warranty work in order to subsidize the below-market reimbursement rates paid by manufacturers on warranty work.  Id. at 40-41.

Nothing in the proposed Amended Complaint undermines the sufficiency of this "consumer welfare" rationale.  Hence, the court determines that the new pleadings do not state a plausible due process claim.

D.    Discovery

While the court expresses no view as to the propriety of discovery in facial challenges in general, in the instant case, the court specifically inquired of Alliance, at oral argument on the Commissioner's Motion to Dismiss, what discovery Alliance would do, if permitted to do discovery in support of its constitutional claims.  The only subject on which Alliance suggested discovery might be of use is the legislature's purpose in enacting the 2009 Amendments.  However, the court held that, as to Alliance's due process claim, economic legislation like the CFA, which does not burden fundamental rights or single out groups, requires only rational speculation, not evidentiary support.

10

MTD Ruling at 40.  There is no need, therefore, for factual development of Alliance's facial challenge under the Due Process Clause.

Evidence as to purpose may be relevant to a Contracts Clause claim, given that, "[w]hen a state law constitutes substantial impairment, the state must show a significant and legitimate public purpose behind the law." Buffalo Teachers Fed'n v. Tobe, 464 F.3d 362, 368 (2d Cir. 2006).  In the present case, however, Alliance has not plausibly alleged substantial impairment, because the 2009 Amendments were reasonably foreseeable based on the 1982 CFA.  Moreover, as Alliance conceded at oral argument, the issue of foreseeability is a legal determination for the court, and this determination does not require and will not be affected by permitting discovery.  Indeed, it is unclear to the court what discovery could reveal that would support any of Alliance's claims in this facial challenge.

To find Alliance's new pleadings legally sufficient, this court would have to adopt a view of the law different from that previously articulated in the November 26 Ruling.  In affirming here its prior view as to the law, the court necessarily concludes that the proposed Amended Complaint no more satisfies the plausibility standard of Iqbal and Twombly than did the original Complaint.  The plausibility standard "does not impose a probability requirement at the pleading stage, it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting plaintiff's claim for relief. Mayor & City Council of Baltimore, Md. v. Citigroup, Inc., 709 F.3d 129, 135 (2d Cir. 2013) (quoting Twombly, 550 U.S. at 556).  No such expectation arises from Alliance's new pleadings.  This determination bears not on the likelihood of success, but on the legal sufficiency of the claims.

11

In sum, Alliance's pleadings lack plausibility, because, absent a change in the court's view of the law, these pleadings do not raise a reasonable expectation that discovery will reveal evidence of an entitlement to relief.  Thus, the court concludes that amendment is futile and that reopening this case would serve no purpose.

## IV.	CONCLUSION

For the reasons set forth above, the court **DENIES** Alliance's Motion to Reopen (Doc. No. 65).

**SO ORDERED.**

Dated at New Haven, Connecticut this 28th day of May, 2014.

_____/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge
